CULPEPPER, Judge.
This is a medical malpractice case. The plaintiff, Elliot Ray Ross, contends he suffered damages caused by the negligence of the defendant, Dr. Charles V. Hatchette, in failing to properly diagnose and treat a giant cell tumor of the left shoulder. From an adverse judgment, plaintiff appealed.
The facts show that in February of 1961, while driving a truck for Younger Brothers, Inc., plaintiff was involved in an accident. He received injuries to his neck, right shoulder and left knee. Ross was seen initially by Dr. Steve Price, a general practitioner of Lake Charles, who diagnosed a whiplash injury to the neck and severe bruises of the left knee. Plaintiff was in the hospital about four days in traction and then wore a neck brace for about six weeks.
Ross employed legal counsel to handle his workmen’s compensation claim against Younger Brothers. This attorney sent Ross to Dr. Hatchette for evaluation. The district judge has summarized the relevant facts in a well considered written opinion as follows:
“On June 22, 1961 Ross reported to Dr. Hatchette complaining of headaches and neck pain radiating to the left shoulder. He gave Dr. Hatchette a history of having been hospitalized for a few days following the accident, receiving traction to the neck. He also stated that he had worn a cervical brace for approximately six weeks. Ross informed Dr. Hatchette he was improving and that his pain was not severe. Dr. Hatchette examined Ross’s left shoulder clinically and noticed that there was no atrophy and that the motion of the left extremity was normal. He took x-rays of the cervical region and found them to be negative. He concluded that Ross had suffered a classical hypertension cervical strain. He recommended head traction at home for the neck and concluded that the injury was temporary and that no permanent disability would result. He stated that as to the left shoulder, there was no clinical signs of any pathology and that he considered the complaints of the left shoulder, as is common in most neck cases, pain referable to the shoulder and upper back by the neck injury. On August 17, 1961 Ross again was seen by Dr. Hatchette complaining of more severe pain in the left shoulder. Dr. Hatchette found a decrease in the ability to move the shoulder and sensitivity therein. He further felt that this was a pain and discomfort resulting from the neck injury. Dr. Hatchette was leaving on vacation for a period of two weeks, and he informed Ross of this. He told the plaintiff if he got worse while he was gone to see another doctor about his shoulder. He also informed Ross that he might have to hospitalize him upon his return from vacation for further examination and/or treatment as the pain may be due to the tendon problem. There was nothing to indicate upon clinical examination that the shoulder *822 problem was anything more serious than a possible tendon problem. Upon Dr. Hatchette’s return from vacation, he saw the plaintiff September 5 and noted that Ross was obviously having extreme difficulty with his shoulder. He sent Ross to the hospital immediately and x-rays were taken of the left shoulder, which revealed a giant cell tumor of the head of the humerus. Dr. Hatchette’s concern at this moment was to determine the grade of this tumor. He talked with the attorney for the insurance company that was handling the workmen’s compensation claim and told him that there was a possible hairline fracture in the shoulder and that an operation would be necessary to determine whether this was a pathological problem or was a result of the accident. The insurance attorney agreed to pay for the hospitalization for Ross’s operation. Dr. Hatchette immediately performed surgery on Ross’s shoulder for the purpose of obtaining a biopsy as well as to remove as much of the tumor mass as possible. He performed the operation and cleaned the area of the tumor and obtained samples for the purpose of examination by Dr. Cook, a pathologist. The final report by Dr. Cook was given to Dr. Hatchette the following day. This report reflected that this was a giant cell tumor, grade two. Dr. Hatchette consulted with the radiologist and they agreed that x-ray treatments and medication would be proper in view of the fact there was a drainage from the infected area. After the operation Ross stayed in the hospital for about a week, at which time he was discharged, and from that time until January 22, 1962 he was seen by Dr. Hatchette and treated with various medications and received six to eight deep x-ray treatments. During this course of treatment, Dr. Hatchette repeatedly x-rayed the area to determine whether the treatments were bringing about results. By January, a period of three to four months, Dr. Hatchette had determined that they had been able to bring the infection. under control but were making no progress insofar as the regeneration of the bone was concerned. At that point he concluded that, since Ross was an indigent and could afford no more hospital expenses, and the insurance company would not pay for same, he should be referred to the Charity Hospital in New Orleans for the necessary bone graft procedures. Ross was sent to the Charity Hospital in New Orleans in January of 1962 and over a period of time received bone grafts and extensive care. At the time of this trial he was able to raise his arm partially to the side, but it was a limited type of motion. Dr. Hatchette stated that when he first saw the tumor and the deteriorated condition of the humerus that he knew the plaintiff would then have a permanent disability. “Dr. Hatchette and all the other doctors testifying in this case stated that this is the first giant cell tumor that they had ever seen in the area of the humerus or shoulder. This type of tumor is usually located in the leg and hip area. Dr. Alvin Johnson, a general practitioner of New Orleans, testified, as did all the other doctors, that this type of tumor progresses very slowly and doesn’t threaten life. He stated that generally there are three types of treatment that are administered, curettement, deep x-ray therapy and excision of the area.
“Dr. Norman P. Morin, an orthopedic surgeon, after having had access to the records of this case, stated that the procedure followed by Dr. Hatchette were the proper procedure, that curettement and x-ray were both acceptable procedures, and that Dr. Hatchette performed both of these. He concluded that the treatment rendered by Dr. Hatchette was very good.
“Dr. Ben Goldsmith, a general practitioner and surgeon with forty-five years experience, stated that the procedure used by Dr. Hatchette was the same procedure that he would have used had he been presented with this same problem.”
*823 The applicable law is stated in Meyer v. St. Paul-Mercury Indemnity Company, 225 La. 618, 73 So.2d 781 (1953) as follows:
“A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case.” (citations omitted)
Applying the quoted rule of law to the facts of the present case, the district judge reached the following conclusion which is amply supported by the evidence:
“As we review the medical testimony in this case this Court concludes that Dr. Hatchette has clearly shown that he possessed the required skill and competence to treat this type of problem, and that in applying that skill to the given case, he used reasonable care and diligence along with his best judgment. The fact that Ross has a permanent disability to the left arm is certainly not due to the lack of any medical care or treatment on the part of Dr. Charles V. Hatchette.”
Plaintiff’s principal argument on appeal is that despite his complaints of pain in his left shoulder, when he first saw Dr. Hatchette on June 22, 1961, the defendant took no x-rays at that time and hence failed to discover the tumor. The argument is that Dr. Hatchette negligently followed his pre-formed opinion, that the patient’s complaints of pain in the left shoulder were referred from the cervical strain, and this caused him to miss the diagnosis.
Dr. Hatchette explained that there were no clinical symptoms in the left shoulder at the time of the June 22, 1961 examination. There was excellent motion of the shoulder in all directions, no swelling, no atrophy and nothing to indicate at the time that there was a tumor in the left shoulder. Of course, by the time Dr. Hatchette saw plaintiff again on August 17, 1961, he had limited motion in the left shoulder and sensitivity to pressure. The doctor was preparing to leave on vacation, but he advised plaintiff to see another doctor if he had trouble during defendant’s absence. When Dr. Hatchette returned and saw plaintiff on September 5, 1961, the condition was much worse. He immediately x-rayed the shoulder, found the tumor and performed surgery on September 7.
Both Dr. Norman P. Morin, an orthopedic surgeon, and Dr. Ben Goldsmith, a general practitioner and surgeon of long experience, testified that under the same history and symptoms they would have followed the same procedure as that used by Dr. Hatchette. There is no expert medical opinion to the contrary.
Plaintiff also contends that Dr. Hatchette was negligent in attempting to use drugs following the surgery on September 7, instead of immediately proceeding with bone grafts. There is no evidence to support any charge of neglect in this regard. On the contrary, the record shows Dr. Hatchette took an unusual personal interest in plaintiff’s case and did everything he could for him.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.